# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIAT ATZILI, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED NATIONS RELIEF AND WORKS AGENCY ("UNRWA"), ET AL., <br><br> Defendants. | § § § § § § § § § § § § § <br><br> Civil Action No. 25-cv-5677 |

## PLAITIFFS' SUPPLEMENTAL MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

AMINI LLC
Bijan Amini
Avery Samet
John W. Brewer
131 West 35th Street, 12th Floor
New York, New York 10001
Tel. (212) 490-4700

MM~LAW LLC
Gavriel Mairone (admitted to S.D.N.Y. Bar)
Ariel Mairone (N.Y. state bar # 4993259, pro hac vice application to be filed)
Jonathan Goldberg (pro hac vice application to be filed)
875 North Michigan Avenue, Suite 3100
Chicago, Illinois 60611
Tel. (312) 253-7444

*Attorneys for Plaintiffs*

Plaintiffs respectfully submit this supplemental memorandum in further opposition to Defendants' motion to dismiss, as authorized by the Court (Doc. No. 31), to address the recent decision in No. 1:24-cv-04765-AT, *Estate of Tamar Kedem Siman Tov et al. v. UNRWA et al.* (the "Siman Tov Opinion" or "Opinion"), which is currently on appeal. This brief submission does not substitute for the arguments set forth at length in the prior briefing, and is limited to addressing the Siman Tov Opinion, which was issued after that briefing had been completed.

## PRELIMINARY STATEMENT

The Anti-Terrorism Act ("ATA") creates a civil cause of action for American citizens injured worldwide by acts of international terrorism against those who assist such acts. The Complaint here alleges that Defendants intentionally provided Hamas with the capabilities to launch the terror attack of October 7, 2023, including cash to buy weapons and facilities to launch attacks, despite knowing that Hamas was a designated terrorist organization. In response, the Defendants claim immunity for these acts under the Convention on the Privileges and Immunities of the United Nations ("CPIUN"), 21 U.S.T. 1422.[1] In ruling for the Defendants, the Siman Tov Opinion makes several key findings with which Plaintiffs disagree.

First, the Opinion found that CPIUN Section 11 expressly grants immunity to "subsidiary organs" of the UN. Plaintiffs disagree because no provision of the CPIUN expressly grants such immunity. Second, the Opinion found that UNRWA is a subsidiary organ as envisioned by the treaty because two resolutions of the UN General Assembly during the 1950s referred to UNRWA as such, and because a smattering of internal UN documents do as well even though others do not. Plaintiffs disagree that the CPIUN grants the power to the UN to label any organization – however

---

[1] Defendants also claim immunity under the International Organizations Immunities Act ("IOIA"), but the Siman Tov Opinion does not reach that ground, so accordingly, we do not address it here.

1

tenuously related in form and function to the UN's core activities – immune simply by declaring it to be so. Here, UNRWA was neither formed as a "subsidiary organ," nor does it function as a subsidiary of any UN principal organ, nor is the UN consistent in its description of UNWRA.

Third, the Opinion found that the CPIUN provides immunity even for violations of jus cogens norms. Plaintiffs again disagree. Under the legal rules governing treaty interpretation, treaties may not be interpreted to provide impunity for genocide, mass rape and ethnic cleansing.

Fourth, the Opinion found that the individual defendants were immune because acts taken in an official capacity by officials of an immune organization are immune. Plaintiffs again disagree. Even if UNRWA were itself somehow immune, acts taken by UNRWA officials that constitute jus cogens violations cannot, as a matter of law, be considered taken in their official capacity because they are fundamentally ultra vires.

In sum, we believe that the Siman Tov Opinion provides the UN with a blank check to grant absolute immunity to a tremendous variety of persons and organizations, even for the most heinous crimes. The "UN System" now includes hundreds of ancillary programs, funds, organizations, and instrumentalities, each with its own individual relationship to the United Nations. The interpretation of the CPIUN as irrevocably ceding authority over which of those entities should get absolute immunity cannot be reconciled with the CPIUN's text, ratification history or other statutes and treaties.

Congress passed the ATA to provide redress in U.S. Courts for American citizens injured worldwide by designated terrorist organizations. As a result, the Court should be skeptical of a theory that would allow the UN General Assembly to authorize such acts with impunity. Defendants' motion to dismiss should be denied.

ARGUMENT

I.  THE CPIUN DOES NOT EXPRESSLY IMMUNIZE UNRWA

Nothing in the CPIUN expressly grants immunity to "subsidiary organs" and nothing sets forth any criteria for determining what is and is not such an organ. Nevertheless, the Siman Tov Opinion (at 8) found this immunity to be expressly stated in Section 11 of the CPIUN:

> The CPIUN extends its grant of absolute immunity to "subsidiary organs of the [UN]." *See* CPIUN art. IV, § 11 ("[S]ubsidiary organs of the [UN] . . . shall, while exercising their functions . . . enjoy . . . in respect of words spoken or written and all acts done by them in their capacity as representatives, immunity from legal process of every kind.").

Plaintiffs disagree. When read in full, Section 11 does not provide any immunity to subsidiary organs. Rather, it provides immunity only to a specific group of foreign diplomats. Section 11 is part of the CPIUN's Article IV, entitled "Representatives of Members." Without the ellipses inserted by the Siman Tov Opinion it begins:

> Representatives of Members to the principal and subsidiary organs of the United Nations and to conferences convened by the United Nations, shall, while exercising their functions …

In context, Section 11 clarifies that state diplomats are protected from suit when they represent their nations in connection with principal organs, subsidiary organs or even just conferences of the UN. In other words, it provides the same protection to, for example, Finland's official delegate to the UN's Human Rights Council (a subsidiary organ) as it does to Finland's ambassador to the United Nations proper.[2] The treaty simply says nothing, in Section 11 or elsewhere, about providing immunity for the panoply of UN–branded agencies and affiliates which are not

---

[2] *See* #24-4 (organizational chart showing HRC on a list of subsidiary organs while excluding UNRWA from that list). (We cite in this submission to the prior briefing in the Siman Tov action by the relevant documents' ECF docket number in that action as incorporated by reference in the stipulation (Doc. No. 22) filed in this action.)

3

composed of "Representatives of Members," do not report to such bodies, and are not funded by the UN. As the Government pointed out, nothing in the CPIUN text or the UN Charter envisions "comprehensive operational programs" to be considered subsidiary organs entitled to absolute immunity. #59 at 5.

Tellingly, in the prior briefing, UNRWA never relied on Section 11, and instead only relied on the CPIUN's Section 2, which grants immunity to "the United Nations" but says nothing about the immunity of "subsidiary organs" or what they are.[3]

## II. THE CPIUN DOES NOT IMPLICITLY IMMUNIZE UNRWA

Even if the CPIUN were read to implicitly provide immunity to certain integral UN bodies not identified by the UN Charter, UNRWA is not such an organization.

Ordinarily, the party claiming immunity must make the prima facie showing that it qualifies for the immunity it seeks. But the Siman Tov Opinion (at 10) put the burden on plaintiffs to prove that the Defendants were *not* immune. The Court relied on *Brzak v. United Nations*, 597 F.3d 107 (2d Cir. 2010), which says nothing of the kind. Because the defendant in *Brzak* was literally the UN itself, there was simply no dispute over whether it was "the United Nations" within the meaning of Section 2 of the CPIUN. By contrast, whenever defendants claim to be immune because, for example, they are diplomats or instrumentalities of foreign governments, the law requires them to make the initial showing that they are what they claim to be. #25 at 7; #53 at 5-6. Here, the initial burden should have been on Defendants to prove, with evidence, that UNRWA fell within the scope of "the United Nations" as used in Section 2.

---

[3] The Opinion also cites *Georges v. United Nations*, 834 F.3d 88 (2d Cir. 2016), where the plaintiffs sued both the UN itself and a UN Security Council mission to Haiti ("MINUSTAH"), but plaintiffs did not dispute that MINUSTAH was part of the "United Nations" for Section 2 immunity purposes. Therefore, the decision assumed but did not decide that question. #25 at 11-12 & n.8.

4

The Siman Tov Opinion found that UNRWA was a subsidiary organ deserving of absolute immunity based on (1) the UN's assertions in *this* litigation; (2) two continuing resolutions passed in the 1950s describing UNRWA as a subsidiary organ; and (3) historical, internal UN statements that UNRWA should have immunity. Siman Tov Opinion at 10-11, 14. First, the UN's statements in this litigation should not be sufficient evidence of anything. Second, the United Nations General Assembly has passed many dozens of resolutions relating to UNRWA over 75 years – the fact that two of them (but not the 1949 resolution creating UNRWA) referred to UNRWA as a subsidiary organ in passing is likewise not dispositive of anything. #42 at 7 n.6. Third, it is for this Court, not the UN taking litigation positions on behalf of its affiliates, to determine who is and is not immune from liability for violations of Acts of Congress. #67 at 17.

On this ground, the CPIUN's ratification history, which the Opinion did not engage with, is instructive. It is undisputed that the Senate was told by the State Department that the CPIUN would not provide the "United Nations" with any greater protection than it already enjoyed in the U.S. under the IOIA (as then interpreted) in light of Pres. Truman's designation of the UN for IOIA protection in 1946, before UNRWA even existed. #25 at 9-10. It is undisputed that the Senate asked the State Department whether additional agencies would be protected by the treaty and were told they would not be. *Id*. at 10; #53 at 10. This is particularly important, because, under the Siman Tov Opinion's interpretation, the Senate's 1970 decision to ratify the CPIUN somehow gave the UN an unreviewable future blank check to create whatever new entities it wanted to, regardless of how much such entity's mission deviated in theory or practice from the UN's core purpose and activities, with the U.S. Government left powerless to assess whether any particular entity deserved immunity in federal court or not on the merits. This would represent a significant departure from the prior system, under which every president after President Truman has had statutory authority

5

under the IOIA to choose to extend immunity to additional international organizations, including UN affiliates, as has in fact been done. #25 at 9 n.4. And just as importantly, the IOIA empowers future presidents to withdraw or limit the immunity granted to a particular entity by a previous president, if circumstances have changed and the prior grant of immunity no longer makes good policy sense. 22 U.S.C. §288.

Nor is the claim that all "subsidiary organs" are part of the "United Nations" for Section 2 immunity purposes a well-established or even coherent legal rule based on something other than the CPIUN's actual text. As we have shown, the label "subsidiary organ" has long been used inconsistently within the UN system, sometimes with narrow meanings and sometimes with apparently broader ones. #42 at 7; #53 at 8. No test interpreting the CPIUN can extend immunity to "subsidiary organs" without a stable definition of what they are and what they aren't, and the broader the definition, the less plausible it will be as a fair interpretation of the CPIUN. Significantly, the initial request for CPIUN immunity did not even use the phrase "subsidiary organ," much less claim that UNRWA was one. Instead, it claimed that UNRWA was entitled to Section 2 immunity "as an integral part" of the UN. #17-1 at 2. "Integral part" indeed seems a more justifiable interpretation of Section 2, but that proposed legal test was then rapidly abandoned by the defendants as the briefing proceeded, as soon as the plaintiffs pointed out all of the factual evidence tending to show that UNRWA was not an "integral part" of the UN itself. #25 at 13-16. *See also* #53 at 7.

Here, the Siman Tov Opinion embraces the broadest conceivable interpretation of "subsidiary organ," by apparently somehow concluding (at 8 and 14-15) from the UN Charter's article 22, which gives the General Assembly the authority to create subsidiary organs, that absolutely anything and everything created by a General Assembly resolution is, for that reason

6

alone, a subsidiary organ – regardless of how it is governed, regardless of how it is financed, and regardless of what functions or activities it performs. This conclusion does not follow logically from either the language or the purpose of article 22 of the charter. But this approach, and only this approach, then allows the Opinion to simply ignore all of the evidence regarding how UNRWA is governed, how UNRWA is financed, and what functions and activities it performs, all of which make clear that it bears little resemblance to the sort of paradigm "subsidiary organ" that it might seem sensible to fit within the definition of "the United Nations" for the purposes of interpreting Section 2's immunity provisions. #25 at 13-16; #67 at 14-16.

Indeed, not only does the very General Assembly resolution that originally created UNRWA not reference article 22 or characterize UNRWA as a "subsidiary organ," it affirmatively contradicts the defendants' current claims about CPIUN immunity by asking the UN's Members to give UNRWA the same immunities "which have been granted to the United Nations Relief for Palestine Refugees," UNRWA's predecessor entity performing similar functions. #53 at 8. This is the polar opposite of saying that UNRWA must or should receive the same immunities those Members were recognizing for the UN itself (whether via the CPIUN or laws like the IOIA).

Finally, the Siman Tov Opinion's handling (at 14-16) of the argument that UNRWA is functionally analogous to the "specialized agencies" misunderstands that argument. It is not that UNRWA literally qualifies as a "specialized agency" within the specific definitional section of the separate treaty known as CPISA (not ratified by the U.S.) which would provide immunity to those entities. Rather, it is that the very existence of the CPISA shows that the CPIUN's grant of Section 2 immunity to "the United Nations" does not extend to all UN-affiliated entities.

### III.  THE CPIUN PROVIDES NO IMMUNITY FOR JUS COGENS VIOLATIONS

All treaties are subject to the basic principle of international law that they cannot be interpreted to conflict with jus cogens norms. This approach is mandated by the Vienna

7

Convention on the Law of Treaties, the Restatement (3d) of Foreign Relations Law, and the UN's own International Law Commission (discussed at #25 at 17-18; #53 at 12-13). Jus cogens norms include prohibition against genocide, mass rape and ethnic cleansing, and can never be said to have validly been authorized. *See Kashef v. BNP Paribas*, 925 F.3d 53 (2d Cir. 2019). A treaty that purported to immunize these acts would be tantamount to authorizing these acts.

Here, the Complaint alleges that the Defendants intentionally provided Hamas with the financial and other material support necessary to undertake the atrocities of the October 7 Attack. The Complaint also details how Defendants knew that they were providing this support to a designated terrorist organization with a history of attacks against civilian targets and the stated goal of ethnic cleansing. Complaint ¶¶ 916-935. In fact, the Defendants met with and collaborated with Hamas leaders and even Specially Designated Global Terrorists themselves. *Id.* ¶¶ 1013-1027. Even had the CPIUN expressly authorized or granted impunity for these specific acts, it would be void as violations of jus cogens.

The Siman Tov Opinion sidestepped these issues by misconstruing them as voluntary ideals that would need to be "waived" under the CPIUN. But the question is not whether the CPIUN waives certain protections, but whether the treaty may be interpreted to validly provide such protections in the first place. These principles, dating back to the Nuremberg trials of almost eight decades ago, are fundamental to international law – the Siman Tov Opinion's view that they must be explicitly acknowledged in the CPIUN's text or else be overridden has it exactly backwards.

Further, both the UN Security Council in binding resolutions and the General Assembly in non-binding ones have declared that providing justice and redress for victims of terrorism is obligatory for member states and that financing terrorism is contrary to the purposes of the UN (#25 at 18-20; #53 at 13-15). As a result, it makes no sense to read the CPIUN as immunizing

8

these acts if perpetrated by those affiliated with the UN. The Siman Tov Opinion did not address these authorities.

### IV.     THE CPIUN DOES NOT IMMUNIZE THE INDIVIDUAL DEFENDANTS

The six individual defendants all claim immunity under Section 18 of the CPIUN, which provides immunity to "[o]fficials of the United Nations" but only "in respect of words spoken or written and all acts performed by them in their official capacity." Two of them (Messrs. Lazzarini and Grandi) additionally claim the heightened quasi-diplomatic immunity provided by Section 19 of the CPIUN to "the Secretary-General and all Assistant Secretaries-General," which is not limited to acts performed in an official capacity. The Siman Tov Opinion wrongly accepted these claims at face value, and further confused matters by treating (at 26-27) the heightened immunity claimed by Lazzarini and Grandi first, as if it were typical of the rest.

But even if the individual defendants were "[o]fficials of the United Nations," which they are not, they would not be immune for jus cogens violations, and not only because of the basic treaty-interpretation principles outlined above. Section 18 liability is limited to acts taken "in their official capacity," and jus cogens violations by definition are acts outside any official's "official capacity," because no government and no international organization has the capacity to authorize them. This is the direct holding of *Yousef v. Samantar*, 699 F.3d 763 (4th Cir. 2012), and that holding is further bolstered by the Second Circuit's holding in *Kashef*, 925 F.3d at 61-62, which held that a defendant alleged to have aided and abetted a sovereign government's genocide could not rely on the "act of state" defense because no sovereign state could authorize the actions the defendant was alleged to have aided and abetted. #25 at 22-24; #53 at 21-23. It is not a question of finding a jus cogens "exception" to otherwise blanket immunity, but a question of what can count in the first place as an official-capacity act of a foreign official (as in *Yousef*) or an official

9

act of a foreign government (as in *Kashef*). The attempt (Siman Tov Opinion at 26 n.5) to distinguish *Yousef* and *Kashef* because they do not deal with the CPIUN as such makes no sense. Section 18 CPIUN immunity is limited to acts taken in an official capacity just like the doctrines invoked in *Yousef* and *Kashef*.[4]

Finally, as to Lazzarini and Grandi, the Siman Tov Opinion erred (at 25 n.4) by treating an unsubstantiated website giving them both the title of "Under Secretary-General" as the equivalent of dispositive evidence that they actually serve the UN in that role. Indeed, the opinion claims that the plaintiffs wrongly focused on their "titles" (i.e., their actual current jobs) rather than their "rank" (i.e. their alleged honorary or courtesy title of Under Secretary-General of the UN itself). This is exactly backwards. As the ratification history shows (#53 at 26), the Senate was specifically concerned about the heightened level of immunity that Section 19 would provide compared to what was available under prior law comparable to Section 17, and was assured by the State Department that the heightened protection would only be available to a very limited number of individuals involved in the senior management of the UN itself. The Senate was certainly not warned that this provision could be another unreviewable blank check, by which the UN would be empowered to hand out get-out-of-jail-free cards to favored individuals not actually performing the job responsibilities of an Under Secretary-General or Assistant Secretary-General. There is no basis for construing the language of Section 19 to extend to essentially honorary titles or "ranks" rather than those actually performing the jobs referred to in the text.

---

[4] *Devi v. Silva*, 861 F. Supp. 2d 135 (S.D.N.Y. 2012), does not contradict the later Second Circuit opinion in *Kashef,* and moreover is inapposite as it concerned diplomatic immunity, which is broader than official-acts immunity under CPIUN Section 18.

## CONCLUSION

For the foregoing reasons as well as all of those set forth in the prior briefing, the Siman Tov Opinion is not correctly decided and should not be followed, and the defendants' motion to dismiss should be denied.

Dated: New York, New York
October 30, 2025

                                              AMINI LLC

                                              By     */s/ Avery Samet*
                                                  Bijan Amini
                                                  Avery Samet
                                                  John W. Brewer
                                          131 West 35th Street, 12th Floor
                                          New York, New York 10001
                                          Tel. (212) 490-4700
                                          bamini@amnillc.com
                                          asamet@aminillc.com
                                          jbrewer@aminillc.com

                                              MM~L<small>AW</small> LLC

                                              By     */s/ Gavriel Mairone*
                                                 Gavriel Mairone (admitted to S.D.N.Y. Bar)
                                                Ariel Mairone (N.Y. state bar # 4993259,
                                                pro hac vice application to be filed)
                                                Jonathan Goldberg (pro hac vice application to be
                                                filed)
                                          875 North Michigan Avenue, Suite 3100
                                          Chicago, Illinois 60611
                                          Tel. (312) 253-7444

                                          *Attorneys for Plaintiffs*

Of Counsel:
Mark Sunshine, Esq.
Thomas Berner, Esq.